**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **AK MEETING IP LLC,** | |
| **Plaintiff,** | **Civil Action No. 6:22-cv-251-ADA** |
| **v.** | |
| **LIFESIZE, INC.** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**DEFENDANT LIFESIZE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

EAST/196314061

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.   LEGAL STANDARD............................................................................................................2

III.  RELEVANT FACTS .............................................................................................................3

IV.   ARGUMENT.........................................................................................................................6

      A.    Judgment On the Pleadings Should Be Entered Against Plaintiff's Claim for
            Direct Infringement..................................................................................................6

V.    CONCLUSION....................................................................................................................10

EAST/196314061

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas IP, LLC v. Exelon Corp.*,
189 F. Supp. 3d 768 (N.D. Ill. 2016), aff'd, 686 F. App'x 921 (Fed. Cir. 2017) ......................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................2

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ............................................................................................3, 10

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ..................................................................................................2

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Witter Co.*,
313 F.3d 305 (5th Cir. 2002) ..................................................................................................2

*Kahn v. Gen. Motors Corp.*,
135 F.3d 1472 (Fed. Cir. 1998)...............................................................................................2

*Lighthouse Consulting Grp., LLC v. BB&T Corp.*,
476 F. Supp. 3d 532 (W.D. Tex. 2020)...................................................................................2

*Metricolor LLC v. L'Oreal S.A.*,
791 F. App'x 183 (Fed. Cir. 2019) .........................................................................................2

*Vervain, LLC v. Micron Tech., Inc.*,
No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ..............................3, 10

**Other Authorities**

Federal Rule of Civil Procedure 12 ...............................................................................................2

EAST/196314061

## I.    INTRODUCTION

Defendant Lifesize, Inc. ("Lifesize") respectfully moves for judgment of noninfringement on the pleadings because Plaintiff AK Meeting IP LLC ("Plaintiff" or "AK Meeting") has not alleged that any Lifesize product sends information back to the originating client computer as is required in all claims of the asserted patents.  Neither Lifesize nor the Court should be forced to expend any additional resources on this case where the allegations of infringement are facially lacking and critically flawed.

Plaintiff accuses Lifesize of infringing two patents, U.S. Patent No. 8,627,211 ("the '211 Patent") and U.S. Patent No. 10,963,124 ("the '124 Patent"). Each of the claims of these patents requires an originating client computer to share either its cursor or some other content. Critically, the claims require sharing to occur in the following manner: (1) an originating client computer transmits a message regarding its cursor/content to a server, and (2) the server sends the shared cursor/content to each of the client computers on the network, including the originating client computer (the "originating computer" limitation).

Plaintiff does not allege in its complaint that the accused Lifesize product sends the shared cursor/content back to the originating client computer, nor could it since the accused product does not operate in this manner. For that reason, any attempt by Plaintiff to amend its complaint would be futile.

Plaintiff's failure to address the "originating computer" limitation is especially conspicuous in light of the patents' prosecution history.  The prosecution history demonstrates that the "originating computer" limitation was a point of novelty and a key reason the examiner allowed the claims of the asserted patents to issue.  Judgment on the pleadings should be entered against Plaintiff without leave for Plaintiff to amend its complaint because Plaintiff does not allege that any Lifesize product sends information back to the originating client computer as is

1

required in all claims of the asserted patents, nor could Plaintiff make any such allegation since

the accused Lifesize product does not operate in this manner.

## II.     LEGAL STANDARD

The central issue arising from a motion brought pursuant to Federal Rule of Civil

Procedure 12(c) is whether, in the light most favorable to the plaintiff, the complaint states a

valid claim for relief. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Witter Co.*, 313

F.3d 305, 312 (5th Cir. 2002).  Courts evaluate a Rule 12(c) motion under the same standard as a

Rule 12(b)(6) motion.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  To survive a

Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is

proper "where the material facts are not in dispute and a judgment on the merits can be rendered

by looking to the substance of the pleadings and any judicially noticed facts." 313 F.3d at 312.

The plausibility of infringement is appropriate for assessment at the Rule 12 stage. *See,*

*e.g., Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532 (W.D. Tex. 2020)

(granting defendant's motion for judgment on the pleadings pursuant to Rule 12(c)). To

sufficiently state a claim for direct infringement, a plaintiff must plausibly plead each limitation

of at least one claim. If even one element of a claim is not plausibly pleaded, this provides a

basis for dismissal. *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998) ("The

absence of even a single limitation . . . from the accused device precludes a finding of literal

infringement."); *see, e.g., Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir.

2019) (agreeing with district court that patentee failed to plead direct infringement based on the

failure to plausibly plead a single limitation); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768

(N.D. Ill. 2016), aff'd, 686 F. App'x 921 (Fed. Cir. 2017) (dismissing direct infringement claim

because allegations regarding one claim limitation made it implausible that accused products

2

satisfied a second limitation).  In addition, "a higher level of detail in pleading infringement

may—depending on the complexity of the technology—be demanded for elements clearly

'material' to novelty and non-obviousness." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-

00487-ADA, 2022 WL 23469, at \*5 (W.D. Tex. Jan. 3, 2022); s*ee also Bot M8 LLC v. Sony

Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  "The complaint must support its entitlement

to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet

every claim limitation." *Vervain*, 2022 WL 23469, at \*5 (citing *Bot M8*, 4 F.4th at 1353).

## III.    RELEVANT FACTS

Plaintiff alleges infringement of the '124 Patent and the '211 Patent. The '124 Patent is

entitled "Sharing Content Produced by a Plurality of Client Computers in Communication With a

Server." The '124 Patent discloses a method whereby content is sent via a server from the

originating "one client computer" to several computers including, importantly, the originating

computer itself.  Dkt. 1-3, at Abstract.  Claim 1 of the '124 Patent, which is representative of

each asserted claim, recites a "method implemented on a plurality of client computers in

communication with a server over a computer network, the plurality of client computers each

displaying common content on an associated display area," and requires that one of the client

computers generates messages and sends those messages to the server, which in turn transmits

"output messages including information defining the content to be shared" to "each of the

plurality of client computers **including the one client computer**" for display. Dkt. 1-1, at 4-5

(emphasis added). The "originating computer" limitation is emphasized below:

> 1. A method implemented on a plurality of client computers in communication
> with a server over a computer network, the plurality of client computers each
> displaying common content on an associated display area, the method comprising:
>
> generating messages representing <u>user input received at one client computer</u> of the
> plurality of client computers, the user input defining content to be shared with the
> plurality of client computers;

3

causing the one client computer to transmit the generated messages to the server to elicit transmission of output messages from the server to each of the plurality of client computers including the one client computer, the output messages including information defining the content to be shared;

and in response to receiving output messages from the server at each of the plurality of client computers, *displaying the shared content over the common content on the respective display areas on each of the plurality of client computers* <u>*including the one client computer*</u>.

'124 Patent, Claim 1 (emphasis added).

The "originating computer" limitation was key to overcoming a prior-art based rejection during prosecution of the '124 Patent. Ex. A ('124 Patent File History Excerpt, 2020-10-27 Applicant Arguments/Remarks Made in Amendment) at 1. The patent examiner had rejected the pending claims in light of a prior art reference called "Martin." Ex. B ('124 Patent File History Excerpt, 2020-07-28 Rejection) at 2–4. To circumvent this prior art, the applicant explicitly emphasized that messages are sent from the server to *all* client computers, *including* the computer which originally generated the messages. Ex. A at 1 ("Additionally, the output messages are also transmitted back to the one client computer that generated and transmitted the messages to the server. This has been clarified in amended claim 1 by the language 'each of the plurality of client computers including the one client computer.' Nowhere does Martin disclose this feature of Applicant's claim 1.").

The other patent asserted by Plaintiff, the '211 Patent, is entitled "Method, Apparatus, System, Medium, and Signals for Supporting Pointer Display in a Multiple-Party Communication." The '211 Patent claims systems, apparatus, and methods for transmitting cursor messages to manifest a pointing function. Dkt. 1-4, at Abstract. Claim 1 of the '211 Patent, which recites a "method for supporting multiple-party communications in a computer network including a server and at least one client computer," requires that the "client computer"

4

send a "cursor message" to the server "representing a change in a position of a first cursor" on

the client computer, in response to which the server generates a "pointer message" used to

display the cursor. Dkt. 1-2, at 3-4. Importantly, the final limitation of the claim requires that this

"pointer message" be sent back to the originating "client computer." *Id.*, at 5. This limitation is

indicated in the emphasis below.

> 1. A method for supporting multiple-party communications in a computer network including a server and at least one client computer, the method comprising:
>
> receiving a first cursor message at the server from the client computer, said first cursor message representing a change in a position of a first cursor associated with the client computer in response to user input received from a user of the client computer;
>
> producing a first pointer message in response to said first cursor message, said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client computer;
>
> ***and transmitting said first pointer message <u>to said client computer</u>***.

'211 Patent, Claim 1 (emphasis added).

Like the '124 Patent, the "originating computer" limitation was also essential to the

procurement of the '211 Patent. In response to a prior art rejection by the patent examiner, the

applicant prosecuting the '211 Patent specifically explained that "[t]he display of a pointer

provides feedback to a user of the client computer of a network latency associated with a round

trip from the client computers to the server and back again to the client computer. The displayed

pointer also more closely corresponds to the client's pointer as it would be displayed on other

client computers, which are likely to encounter a similar network latency." Ex. C ('211 Patent

File History Excerpt, 2010-11-03 Applicant Arguments/Remarks Made in Amendment) at 36. It

was in response to this argument that the Examiner issued a Notice of Allowance. Ex. D ('211

Patent File History Excerpt, Notice of Allowance) at 2 ("In this case, the substance of applicant's

5

remarks in the Amendment filed on 11/03/2010 points out the reason that claims are patentable over the prior art of record.").

## IV.     ARGUMENT

### A.     Judgment On the Pleadings Should Be Entered Against Plaintiff's Claim for Direct Infringement

The following images demonstrate the essence of the Complaint's deficiency. The top image indicates the three essential steps recited in both the '124 Patent and the '211 Patent claims. And the bottom image indicates, with a red "X," the particular limitation for which Plaintiff provides no plausible allegation. Notably, the claims of both the '124 and '211 Patents require that an originating computer share content / a pointer (step 1), that the content / pointer be sent to the computers on the network (step 2a), and that the content / pointer also be sent to back to the originating computer (step 2b).



In the claim chart corresponding to the '124 Patent, Plaintiff calls out Lifesize's Meeting

Solutions as the allegedly infringing product and repeatedly incorporates, as a corresponding

reference for multiple limitations of claim 1, an explanation of "Co-browsing (or web

7

collaboration)" available on Lifesize's website.  *See* Dkt. 1-1. As set forth below, the explanation

of "Co-browsing" functionality included in Plaintiff's claim chart describes nothing more than

the capability of multiple users to control a cursor. Dkt. 1-1, at 4.

| US10963124 B2 Claim 1 | Lifesize |
|---|---|
| causing the one client computer to transmit the generated messages to the server to elicit transmission of output messages from the server to each of the plurality of client computers including the one client computer, the output messages including information defining the content to be shared; and | **Co-browsing (or web collaboration)**, which sometimes includes form-filling and page-pushing as a sub-set of functionality, is a very intensive, one-to-one channel, formerly used for high-value customers or in those cases where it is quicker and more effective for an agent to take over the reins than to talk the customer through the process. While it has been useful for certain businesses, processes and customers, it is difficult to make a case for it on a cost-saving basis alone, although it will encourage the completion rate of sales, and as such, improve profitability.<br><br>Co-browsing may be used to help customers fill out forms, or to complete online transactions, and may be done in conjunction with a concurrent telephone call or web chat. Unlike page-pushing – which is a one-way movement of information from agent to customer – and screen sharing – where the agent takes control of the customer's desktop – co-browsing is a true two-way collaboration tool. Either the agent or the customer can control the cursor or enter data into fields, and business rules can be set up so that the agent does not see or enter sensitive information.<br><https://www.lifesize.com/wp-content/uploads/2021/04/US-CC-DMG-2021-PLATINUM-LIFESIZE.pdf><br><br>The reference describes causing the one client computer to transmit the generated messages to the server to elicit transmission of output messages from the server to each of the plurality of client computers including the one client computer, the output messages including information defining the content to be shared. |

Nothing in the Complaint or in Plaintiff's claim chart provides any indication that

Lifesize's products or services satisfy the "originating computer" limitation of claim 1 of the

'124 Patent. For example, there is no suggestion anywhere in the Complaint or the claim chart

that the client computer "transmit[s] . . . generated messages to elicit transmission of output

messages from the server to each of the plurality of client computers *including the one client*

*computer.*" (emphasis added). This is unsurprising, because Lifesize's products *do not operate*

in this way. To require all content to be sent to and from a server before displaying it on a user's

8

screen would artificially introduce latency into a user's input and negatively impact the user experience.

The allegations of infringement of the '211 Patent fare no better. In the claim chart corresponding to the '211 Patent, Plaintiff again identifies Lifesize's Meeting Solutions service as allegedly infringing. Plaintiff relies on excerpts from Lifesize's website in an attempt to tie Lifesize's collaboration functionality to the language of claim 1 of the '211 Patent. In particular, Plaintiff cites a guide with an overview of intended instances best suited for utilizing "Co-browsing" functionality and pastes the brief instruction on Lifesize's website about how best to disconnect a mouse and keyboard, as shown below.  Dkt. 1-2, at 4-5.

| US8627211 B2 Claim 1 | Lifesize |
|---|---|
| transmitting said first pointer message to said client computer. | To optimize your Lifesize Dash experience, we recommend doing the following before disconnecting your mouse and keyboard:<br>• Configure your Windows PC or Chromebox device to run in Kiosk Mode.<br>• Turn off the screen locking feature of your tablet.<br>• Enabled Guided Access (iOS) or Screen Pinning (Android) for your tablet.<br>• Enter Lifesize Dash into fullscreen mode on your Windows PC or Chromebox device.<br>• Hide the cursor on the display by pressing any key on the keyboard.<br>For more information, please refer to the applicable developer instructions for your hardware.<br><https://legacy.lifesize.com/~/media/Documents/Generated/Online-Help/dash-letter.ashx><br>The reference describes transmitting said first pointer message to said client computer. |

The image shown above indicates only that a user can hide their cursor "before disconnecting [a] mouse and keyboard." This cited portion of the Lifesize website bears no relation to the corresponding "originating computer" limitation and provides no basis to allege that the pointer message is transmitted from the server *back to the originating computer*.  Again, it is unsurprising that Plaintiff cites to no evidence whatsoever regarding the "originating computer" limitation in the '211 Patent given that Lifesize's products do not practice this limitation.  Lifesize's products do not operate in this way because requiring a cursor or related pointer message to be sent to a server from an originating computer and then sent back from the

9

server to the same computer before displaying the cursor or related pointed message on the

originating computer would introduce latency and degrade the user experience.

Plaintiff's failure to address the "originating computer" limitation is particularly

problematic because the "originating computer" limitation was necessary for applicant to include

in the claims to overcome prior art during prosecution and obtain issuance for both the '124 and

the '211 Patents. *See supra* at p. 4–6.  Because Plaintiff's Complaint includes no plausible

allegation that Lifesize practices the "originating computer" limitation in either asserted patent,

this Court should enter judgment on the pleadings and dismiss this lawsuit.  *Vervain*, 2022 WL

23469, at *5; *Bot M8*, 4 F.4th at 1353; *see also* Ex. E (Order Granting Cisco Systems Inc.'s Rule

12(c) Motion, *AK Meeting IP LLC v. Cisco Systems, Inc.*, 6:22-cv-00248-ADA, 2022 WL

17979765 (W.D. Tex. Dec. 28, 2022)) (granting motion for judgment on the pleadings in lawsuit

involving the same plaintiff and asserted patents because AK Meeting failed to state a plausible

claim for infringement for the '211 patent).  Furthermore, because Plaintiff has no plausible basis

to amend its complaint to add any allegation that Lifesize practices the "originating computer"

limitations in the asserted patents and any such amendment would be futile, the Court should not

grant Plaintiff leave to file an amended complaint.

## V.     CONCLUSION

For the foregoing reasons, Lifesize respectfully requests that this Court grant Lifesize

judgment on the pleadings and dismiss this lawsuit without leave to amend.

EAST/196314061

Dated:  January 26, 2023

Respectfully submitted,

*/s/ Michael G. Strapp/*
John M. Guaragna
Texas Bar No. 24043308
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, TX  78701
Tel: (512) 457-7125
Fax: (512) 457-7001
john.guaragna@us.dlapiper.com

Michael G. Strapp
Massachusetts Bar No. 653884
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Tel: (617) 406-6000
Fax: (617) 406-6100
michael.strapp@us.dlapiper.com

Dwayne K. Goetzel
Texas Bar No. 08059500
**KOWERT, HOOD, MUNYON,
RANKING & GOETZEL, P.C.**
1120 S. Capital of Texas Highway
Building 2, Suite 3000
Austin, TX  78746
Tel: (512) 853-8800
Fax: (512) 853-8801
dgoetzel@intprop.com

*Attorneys for Lifesize, Inc.*

11

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on January 26, 2023, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service via electronic mail.  Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Michael G. Strapp*
Michael G. Strapp

12